**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**GARY WALKER**

**VS** **CA NO. 19-CV-310**

**BANK OF NEW YORK MELLON AS TRUSTEE FOR THE CERTIRFICATEHOLDERS OF THE CWALT, INC. ALTERNATIVE LOAN TRUST 2006-CB39, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2006-CB39, NEWREZ, LLC DBA SHELLPOINT MORTGAGE SERVICING**

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REMAND TO THE SUPERIOR COURT**

**INTRODUCTION**

This matter is a simple breach of contract claim along with two additional statutory claims under Rhode Island law, none of which support a claim for diversity jurisdiction. The Plaintiff filed for breach of contract damages and injunctive relief on May 1, 2019. The Court granted the Temporary Restraining Order alleging that the Defendant had not complied with the terms of the mortgage, particularly mailing a Notice of Default demanding payment at a date, twenty days after the letter was deposited into the United States mail. The complaint included a count for breach of contract against Bank of New York Mellon as trustee for an incorrectly named securitized trust and against the loan servicer, NewRez LLC dba Shellpoint Mortgage for violations of the Rhode Island Fair Debt Collection

Practices Act and the Third Party Loan Servicer Act. The Defendants filed an answer before service on May 10, 2019 and removed the matter to this Court on May 31, 2019, alleging diversity jurisdiction.

**INITIAL DISCUSSION**

Federal courts are courts of limited jurisdiction. "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle,* 74 U.S. (7 Wall.) 506, 514 (1868). This principal is so predominant that federal courts are under a continuing duty to confirm their jurisdictional power and are "obliged to inquire *sua sponte* whenever a doubt arises as to [its] existence ..." *Mt. Health City Sch. Dist. Bd. of Educ. V. Doyle,* 429 U.S. 274, 278 (1977) (citations omitted).

The diversity provisions of 28 U.S.C. § 1332(a) grant district courts original jurisdiction over cases in which the parties are citizens of different states and completely diverse and in which the amount in controversy certain (but not all) class actions if the amount in controversy exceeds $75,000.00 In *Danca v. Private Health Care Systems*, 185 F. 3d 1 (1st Cir. 1999) the Court held that:

As with any assertion of federal jurisdiction, the burden of demonstrating jurisdiction resides with the party seeking removal. Removal statutes are to be strictly construed see: ***Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09, 61 S.Ct. 868, 85 L.Ed. 1214 (1941),** and defendants have the burden of showing the federal court's jurisdiction, *see* ***BIW Deceived v. Local S6, Industrial Union of Marine and Shipbuilding Workers of America, IAMAW District Lodge 4*, 132 F.3d 824, 831 (1st Cir.1997)**.

Diversity jurisdiction over certain actions does not operate to shift the burden of persuasion to plaintiffs to show a lack of federal jurisdiction. The plaintiff does not bear the burden of demonstrating that removal was improvident. Rather, the burden remains with the removing party. In this case, the Defendants bear the burden of establishing all prerequisites of federal jurisdiction.

**THE DEFENDANTS HAVE NOT PROVEN THE JURISDICTIONAL AMOUNT NECESSITY FOR DIVERSITY**

A case asserting state law claims and filed in state court may be removed by a defendant to federal court, if there is both diversity of citizenship and a sufficient amount in controversy pursuant to 28 U.S.C. § 1446(b)—(c)." See *Deaton v. Liberty Mut. Grp., Inc.*, No. CV 17-233 WES,

2017 WL 5198182, at *1 (D.R.I. Nov. 9, 2017) (quoting *Hogan v. Wal—Mart Stores E., L.P.*, No. CA 13-603 S, 2014 WL 66658, at *2 (D.R.I. Jan. 8, 2014)). As the party seeking removal, each Defendant "bears the burden of establishing a reasonable probability that the amount in controversy requirement is met." See id. at *1 (citing *Amoche v. Guarantee Tr. Life Ins.* Co., 556 F.3d 41, 48-50 (1st Cir. 2009)). When determining whether the amount-in-controversy requirement is satisfied, the Court (a) "assumes that [the] [p]laintiff s allegations are true," (b) "considers [t]he types of damages . . . permitted by the state-law cause of action," and (c) "considers affirmative evidence outside of the complaint in support of the amount in controversy." See id. (citations omitted). Out of respect for a plaintiffs "choice of court and principles of 'federalism and comity, removal statutes are to be construed strictly, and in ambiguous cases, constructed against removal.' See id. (*quoting Porter v. Am. Heritage Life Ins. Co*., 956 F. Supp. 2d 344, 347 (D.R.I. 2013)).

As a preliminary matter, the Defendant has not contended that the amount-in-controversy requirement is satisfied. Instead, it has merely stated that "the amount in controversy exceeds $75,000.00, stating that the fair market value of the property exceeds seventy-five thousand ($75,000) dollars." See Notice of Removal. The Defendants both *cite McKenna v.*.

*Wells Fargo Bank, N.A.*, 693 F. 3d 2017(1st Cir. 2012). However, *McKenna* involved a case in which the Plaintiff filed a Massachusetts Truth in Lending Claim to void the mortgage as the basis for this claim. The Court held:

> As for the $75,000 amount-in-controversy requirement, "[n]umerous [district] courts have held that, where a complaint seeks to invalidate a loan secured by a deed of trust, the amount in controversy is the loan amount," *Ngoc Nguyen v. Wells Fargo Bank, N.A.*, 749 F.Supp.2d 1022, 1028 (N.D.Cal.2010),[3] although other courts have calculated the amount in controversy by reference to alternative criteria, including, *inter alia*, "the unpaid principal balance on the note as of the date of removal," *see RC Lodge, LLC v. SE Prop. Holdings, LLC*, No. 12-0112, 2012 U.S. Dist. LEXIS 98199, at *4, 2012 WL 2898815, at *1 (S.D.Ala. July 16, 2012).

In this case, the Plaintiff did not seek to invalidate the mortgage. Rather he has filed two counts against the Bank of New York Mellon as Trustee for Breach of Contract and for specific injunctive relief precluding that defendant from foreclosing due to failure to comply with the terms of the mortgage. The allegations in the complaint for breach of contract alleged in paragraph 68 was that the amount claimed for damages were less than $70,000.00. Defendant, Bank of New York Mellon's answer to this allegation was that Defendants are without sufficient information to admit or deny the allegations contained within this paragraph and leave Plaintiff to his proof thereof. This answer was filed on behalf of both defendants even though Count I was not pleaded against Shellpoint.

Count II for injunctive relief did not seek to invalidate the mortgage. Rather the allegations of the complaint were that the purported notice of default, which is a condition precedent to acceleration and the exercise of the statutory power of sale was not compliant with the terms of the mortgage, specifically that the letter was mailed 29 days before the date specified for the cure of the alleged default. This action thus merely sought to require the Defendant to comply with the terms of the mortgage prior to exercising the statutory power of sale. Thus there was no basis for this assertion that that amount in controversy was greater than $75,000.00 as to Bank of New York Mellon. In addition, no current foreclosure is scheduled. Thus the injunctive relief count is for all practical purposes moot due to the fact of no foreclosure sale.

The two counts against Shellpoint are both for violations of Rhode Island statutes, the Rhode Island Fair Debt Collection Practices Act and the Third Party Loan Servicers Act, in which the Plaintiff alleged that the damages against Shellpoint were for less than $70,000.00 for both counts in the aggregate sum. Thus there is not diversity jurisdiction available to Shellpoint since the damages alleged have nothing to do with the value of the mortgage or property.

This Court in *Hernandez v. US Bank N.A.* et al Ca. No. 18-121 WES (D. Rhode Island, June 18, 2018) held that in a mortgage case where there was no intent to invalidate the mortgage, the actual amount in controversy was the value of equitable title of the property, stating:

> The value of such a delay is not the value of the property, it is the value to plaintiff of postponing foreclosure until he can determine through this suit whether defendants are entitled to foreclose."); Sanders v. Homecomings Fin., LLC, No. 2:08-CV-369-MEF., 2009 WL 1151868, at *3-4 (M.D. Ala. Apr. 29, 2009) (finding amount in controversy not equal to mortgage's original value, but rather "a[t] the very most" to mortgagee's "equity in the home," where mortgagee sought to enjoin foreclosure sale).
>
> The same reasoning requires remand here. Defendants have not provided evidence of the amount in controversy. The value of the mortgage and that of the Property are not what Plaintiffs would win if their lawsuit were to succeed. What they would win — the object of the litigation — is, essentially, equitable title to the Property, something as to which Defendants have not attempted appraisal. Defendants have thus failed to meet their burden to prove federal-court jurisdiction by a preponderance of the evidence.

This procedural claim brought in the injunctive involves less damages to Bank of New York Mellon then was raised in Hernandez. The cost to seek to exercise the statutory power of sale with a valid default letter is the amount in controversy in this case. Thus the Motion to remand should be granted on this ground alone.

**THE DEFENDANTS HAVE WAIVED THE RIGHT TO REMOVE**

On May 10, 2019, the Defendants filed an answer in the Superior Court case, by which they unequivocally indicated their clear and unequivocal intent to remain in State Court. The case was filed in the Superior Court on May 1, 2019 and the Temporary Restraining Order was granted on that date. No service was made on the Defendants, yet the attorney for the Defendants chose to answer the case, rather than removing the case on May 10, 2019. At that time since the service had not been made and the Defendants even though they had received the pleadings on that May 1, 2019 clearly indicated that their intent was to litigate the matter in the State Court.

The Defendants did not file a proforma answer and in fact in their answer filed twelve affirmative defenses. This extensive answer raised multiple affirmative defenses, which were asserted. In this answer they also demanded that the Court:

Dismiss the Plaintiff's complaint on all counts with prejudice;

Deny the Plaintiff's request for damages and attorneys' fees;

Award Defendants reasonable attorneys' fees and costs AND

Any and all other relief that the Court deems meet and just.

Thus this answer of the Defendants made it clear that the Defendants sought to avail themselves of the jurisdiction of the State Court. They did not have to file an answer and in fact filed an answer seeking relief in the form of attorney fees and costs from the Plaintiff. Their answer contained affirmative defenses and in this answer preserved their right to file a Motion to Dismiss under Rhode Island Rules of Civil Procedure 12(b)(6) or 12(b)(1). In *Advanced Construction and Renovation, Inc. v. Mt. Hawley Insurance Company,* Case no. 17-61080 (S.D. Florida, February 9, 2018), the Court held that the filing of a pleading to maintain the status quo did not constitute waiver but each case had to be decided on a case by case basis:

> "However, an action to maintain the status quo in state court, as opposed to an action to dispose of the matter, does not constitute a waiver." *Scholz v. RDV Sports, Inc.*, 821 F. Supp. 1469, 1470-71 (M.D. Fla. 1993) ("[A] motion to dismiss is an affirmative use of the state-court process, and thus, distinguishable from actions to maintain the status quo in state court, such as . . . filing answers and affirmative defenses."). Whether a state court defendant waived its right to remove must be determined on a case-by-case basis. *Hill v. State Farm Mut. Auto. Ins. Co.*, 72 F. Supp. 2d 1353, 1354 (M.D. Fla. 1999). "However, an action to maintain the status quo in state court, as opposed to an action to dispose of the matter, does not constitute a waiver." *Scholz v. RDV Sports, Inc.*, 821 F. Supp. 1469, 1470-71 (M.D. Fla. 1993) ("[A] motion to dismiss is an affirmative use of the state-court process, and thus, distinguishable from actions to maintain the status quo in state court, such as . . . filing answers and affirmative defenses."). Whether a state court defendant waived its right to remove must be determined on a case-by-case basis. *Hill v. State Farm Mut. Auto. Ins. Co.*, 72 F. Supp. 2d 1353, 1354 (M.D. Fla. 1999).

In this case, the Defendants were under no obligation to file an answer to preserve the status quo, yet chose to file the answer, with no status quo to preserve. The Rhode Island Rules of Civil Procedure provide that a defendant has twenty days after service to answer a complaint. The Plaintiff under these same rules has 120 days in Rhode Island to serve the complaint. In this case no service was made in the State Court case. Thus there was no need to file this substantive answer. The foreclosure had been cancelled by virtue of the actions of Defendant, through its attorney Harmon Law had cancelled the sale and the matter was moot as to the foreclosure. Yet they decided to answer and then twenty one days later to remove. For these reasons, the Motion to Remand should be granted.

**THE PLAINTIFF SHOULD BE AWARDED ATTORNEY FEES**

28 U.S.C. 1447(c) provides for attorney fees and costs in the event that the Motion to remand is granted. In *Martin v. Franklin Capital Corp*., 546 U.S. 132 (2005), the United States Supreme Court considered the policy behind § 1447(c). In so doing, the Court noted that [t]he process of removing a case to federal court and then having it remanded back to state court delays resolution of the case, imposes additional costs on both parties, and wastes judicial resources. Assessing costs and fees on remand reduces the attractiveness of removal as a method for delaying litigation and imposing

costs on the plaintiff. The appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied. *Martin*, 546 U.S. at 140. The Court further noted that "[a]bsent unusual circumstances, courts may award attorneys' fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." Id. at 141. Defendants'removal of a case that solely involves state law contract and statutory violations of State law, in view of their actual or constructive knowledge of this Court's decision in *Hernandez* was objectively unreasonable. This unreasonable removal is cause enough in and of itself to justify payment of attorney's fees and costs. Plaintiff further noted that defendants filed their Notice of Removal after filing an answer, thus waiving the right to remove. Thus legal fees and costs arising from proceeding in Federal Court and in filing this action should be awarded to the Plaintiff.

GARY WALKER
By his Attorney,

June 29, 2019

/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, Rhode Island 02920
(401) 943-9230
Jbelaw75@gmail.com

Certificate of Service

I hereby certify that I served a copy of this Memorandum on the following on June 29, 2019:

C. Charles Townsend
Stephen Stoehr

/s/ John B. Ennis